IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LATOSHA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14cv628-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

**I. Introduction**

Plaintiff Latosha Jackson ("Jackson") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See  Chester v. Bowen*, 792

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).   Based on the court's review of the record in this case and the parties' briefs, the court AFFIRMS the Commissioner.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Jackson was 34 years old at the time of the hearing. She has completed high school and two years of college. R. 42-43. She has prior work experience

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

as a census enumerator, cashier, and cocktail waitress. R. 44, 46. Jackson alleges that she became disabled on July 16, 2010, from lupus, depression, and bipolar disorder. R. 48, 51, 124. After the hearing, the ALJ found that Jackson suffers from severe impairments of lupus erythematosus and depression. R. 18. The ALJ concluded that Jackson has performed no past relevant work, but that she retains the residual functional capacity to perform sedentary work with limitations. R. 20. Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Jackson could perform, including work as a food and beverage order clerk and an address clerk. R. 28. Accordingly, the ALJ concluded that Jackson is not disabled. R. 29.

**B.  The Plaintiff's Claim.**  As stated in her Brief in Support of the Complaint, Jackson presents the following issue for review:

> The Commissioner's decision should be reversed, because the ALJ erred in conclusory dismissing the only medical opinion regarding Ms. Jackson's mental impairments from an examining source.

Doc. No. 12, p. 3.

### IV. Discussion

Jackson argues that the ALJ erred in assigning little weight to the opinion of Dr. Glen D. King, an examining consultative psychologist. Specifically, she argues that the ALJ incorrectly found that the record does not contain any opinions from an examining physician indicating that she has "limitations greater than those determined in [the ALJ's] decision." Doc. 12, p. 5. In addition, she contends that the ALJ's rejection of Dr. King's opinion

because it "is inconsistent with the claimant's conservative treatment history" is conclusory and not supported by substantial evidence.  *Id*., p. 6.

On June 10, 2011, Dr. King conducted a consultative psychological evaluation, specifically finding that Jackson's affect was anxious, that Jackson looked quite tired, and that there was no evidence for hallucinations, delusions, depersonalization, or de-realization. He diagnosed her as suffering from Major Depressive Disorder, Single Episode, Moderate, subsequent to her physical condition, lupus, and erythematosus.  Dr. King recommended:

> This patient has a definite constriction of interests and inability to profit from normal life experiences.  She is currently unable at the present time to meet customary work pressures due to a combination of her major depressive disorder and her recurrent lupus, which appears to be not under control medically.  If benefits are granted for her, she will be able to manage them herself at the present time.

R. 404.

After reviewing all the medical records, the ALJ discounted the opinion of Dr. King because the treatment records did not support his assessment concerning Jackson's functional capacity to perform work.  In his summary of the medical records, the ALJ included Dr. King's findings that Jackson attended East Central Mental Health Center for treatment of her depression sporadically, that she has never been psychiatrically hospitalized, and that she used marijuana within the last two weeks of her evaluation.  He also recognized Dr. King's opinion that she is "unable at the present time to meet customary work pressures."  R. 22-23. The ALJ, however, assigned little weight to Dr. King's opinion regarding Jackson's mental functional abilities as it "is inconsistent with the claimant's conservative treatment history."

5

R. 27.

The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

The ALJ's determination that Jackson received conservative treatment for her depression is supported by substantial evidence. Jackson argues that the medical records indicate she experiences homicidal ideations and that a psychiatrist prescribed her multiple psychotropic medications. Other than one isolated occasion, the mental health records are somewhat unremarkable. On February 24, 2011, Jackson contacted the East Central Mental Health Center. A counselor noted:

> [Jackson] called crying and talking of how she was "having a hard time" and "so stressed". [Jackson] stated she wanted to kill her boyfriend. She stated she had a gun but would not hurt him. [Jackson] called her grandmother and had her remove the gun from her house. [Jackson's] grandmother confirmed she had taken the gun. Grandmother stated she would keep it so that client would be able to return home. [Jackson] stated she would not harm boyfriend or self. Stated she called and came to Mental Health to keep her "sanity" and "not do anything to him". [Jackson] will come back to office on tomorrow to see counselor. [Jackson] lives with mother and next door to grandmother. They will "make sure" it is ok tonight.

R. 232. Later that day, a counselor indicated Jackson's presenting problem at the mental health center was "drug THC." R. 230. She also noted Jackson's reports that she "just angry [and] see[ing] stuff and hearing stuff. A lot of killing run out dead [with] blood and stuff.

Another voice tell her hurt other people. A friend of mine." R. 230. The counselor checked boxes indicating a risk assessment of "danger to self," "thoughts of harm to others," and "plan to harm others." R. 230. A mental health specialist assessed a primary diagnosis of major depressive disorder recurrent unspecified. Jackson was not admitted to the hospital. The following day, Jackson returned to East Central Mental Health "stat[ing] she came back to 'let counselor know' she is 'feeling and doing better." R. 227. She also reported that "she felt neither homicidal nor suicidal [and that she was] managing anger well for now." *Id*.

The remaining mental health records are uneventful. For example, during a counseling session on June 3, 2011, the therapist noted that Jackson's "mental status [was] normal." R. 278. On August 9, 2011, the therapist noted that Jackson "prayed not to ever work but never wanted to be like this." R. 502. On September 21, 2011, Jackson reported that she was "a bit depressed because she has no income." R. 501. On October 31, 2011, she "denie[d] suicidal ideations, some depression about lupus and headaches." R. 500. The counselor recommended that Jackson "communicate her frustration to her mom" and "try to rest." *Id*. On November 28, 2011, Jackson reported to the counselor that her depression "don't seem to be getting no better" and that "sometime[s] I want to choke my friend but I won't do it. I don't want to go to jail or be in any trouble. I go and calm down." R. 499. The counselor noted no suicidal ideation and recommended that Jackson continue taking her medication and follow-up with her doctors. *Id*. During a clinical update with the psychiatrist and therapist on January 5, 2012, Jackson reported hearing voices in December. R. 497. The therapist noted that she "suspect[ed] <u>malingering</u> about voices." (Emphasis in

original.)

The therapist conducted an update of Jackson's client information on February 21, 2012. The Comprehensive Client Information form indicates that Jackson is not a danger to herself or others and that her presenting problems are depression/mood disorder, drug THC, and lupus. R. 492. The therapist indicated that non-compliance is a barrier or limitation which may impede treatment. R. 491, 494. During a physician's assessment on March 21, 2012, a psychiatrist found that Jackson was compliant with her medication and that the "Rx worked well at first but wore off." R. 489. Jackson reported that "[t]he voices are getting better." *Id.*

On March 23, 2012, Jackson returned to the therapist reporting that she "has had a rough month" and that she did not complete her assignment from a previous session. R. 488. The therapist found that Jackson was tearful and not positive. Jackson reported that she had no energy and that she wanted to be happy and at peace. The therapist recommended that Jackson focus on "taking away the magic wand" and to complete her assignment. *Id.* On May 30, 2012, Jackson reported that she did not complete her assignment. The counselor and Jackson worked on the assignment during the therapy session. The counselor noted that Jackson was irritable and her affect appropriate. R. 487. On August 3, 2012, Jackson reported that she was "a little better" and "not as depressed." R. 507. On September 4, 2012, Jackson's affect was appropriate and her mood euthymic. The therapist noted that Jackson was tired and tearful, but that she denied suicidal ideation. In addition, she found that Jackson showed "fair progress" and recommended that she "continue to focus on strength

and push beyond [her] comfort level for motivation." R. 506.  Thus, the mental health records indicate that Jackson's therapy sessions were primarily routine in nature and that she received conservative treatment for her depression and other mental health problems.

The plaintiff also argues that her prescriptions for multiple psychotropic medications demonstrate that she received more than conservative treatment for her mental health problems.  During the hearing, however, Jackson testified that she only takes Prozac for her mental health problems. R. 52.  In addition, the mental health records indicate Jackson is not always compliant with her prescribed medication. R. 487, 491, 501.  This court therefore concludes that the ALJ's determination that Jackson received conservative treatment is supported by substantial evidence.

To the extent Jackson argues that the ALJ incorrectly found that the record does not contain any opinions from an examining physician indicating that she has "limitations greater than those determined in [the ALJ's] decision," the court concludes that her argument does not entitle her to relief.  The court recognizes that Dr. King found that Jackson is "unable at the present time to meet customary work pressures." R. 22-23.  The ALJ, however, effectively rejected this finding when he concluded that Dr. King's opinion is not supported by the mental health record indicating Jackson received conservative treatment. The ALJ's determination that Jackson was treated conservatively is supported by substantial evidence.  Moreover, the "ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (citing 20 C.F.R. §§ 404.1513, 404.1527, 404.1545).  After a careful review of the medical records as a whole,

9

the court concludes that substantial evidence supports the ALJ's decision that Jackson is not disabled.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate order will be entered.

DONE this 18th day of June, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE